UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent | ) | |
| | ) | |
| v. | ) | 86 CR 850 |
| | ) | |
| OLGA FLORIAN, | ) | |
| | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court is Defendant Olga Florain's ("Florian") Petition for Writ of Error *Coram Nobis* ("writ of error *coram nobis*") pursuant to 28 U.S.C. § 1651. Dkt. 58. For the following reasons, the writ of error *coram nobis* is denied.

## BACKGROUND

As both parties acknowledge, due to the age of this case, there are no trial or sentencing transcripts, nor are there any prior orders or opinions from this case. However, the record before the Court, which includes Florian's writ of error *corma nobis*, Dkt. 58, the Government's Response to Defendant's Petition For A Writ of Error *Coram Nobis*, Dkt. 65, and the exhibits submitted by the parties is sufficient to resolve the writ of error *coram nobis*.

Florian has been a lawful permanent resident since 1976. Dkt. 58, Def. Ex. A

¶ 2. In 1986, Florian was charged with conspiracy to possess with the intent to

distribute cocaine in violation of 21 U.S.C. § 846 (Count I), distribution of

approximately 22.8 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count II),

and possession with the intent to distribute approximately 7.97 grams of cocaine, in

violation of 21 U.S.C. § 841(a)(1) (Count III). Dkt. 58, p. 4; Dkt. 65, p. 4. A jury

convicted Florian on Count I and found her not guilty as to Counts II and III. *Id*.

Subsequently, Florian's trial counsel filed a post-trial motion that raised several

issues. *See* Dkt. 66, Gov. Ex. F. That motion was denied. Dkt. 65, p. 11.

On September 16, 1987, Judge Plunkett, the district judge who presided over

Florian's trial, sentenced Florian to five years probation and she was required to: (1)

"reside in and participate in the Work Release Program at the Metropolitan

Correctional Center" for six months; (2) "file timely income tax returns while on

probation supervision;" and (3) "donate 300 hours to community service." Dkt. 56,

p. 7-8. No appeal was taken. On November 5, 1991, Judge Plunket granted Florian's

motion for early termination of probation. *Id*.

Thereafter, Florian received her Bachelor of Arts in Social Work and a Master

of Arts in Social Work. Dkt. 58, Def. Ex. D. She has held a number of different jobs

since her conviction. *See id*. She has also traveled to her home country of Guatemala

several times and to Europe. Dkt. 58, Def. Ex. A ¶¶ 10, 12. In 2012, upon returning

to the United States from a trip to Guatemala, she was stopped at customs. Dkt. 58,

Def. Ex. A ¶ 12. As a result of her 1987 conviction, she was placed in removal proceedings before the Chicago Immigration Court. Dkt. 58, Def. Ex. E. She has been in removal proceedings since January 23, 2012 and she has been unable to travel due to the pending immigration removal proceedings. *Id*. Consequently, she now moves this Court to grant her writ of error *coram nobis*, which would vacate her criminal conviction.

## LEGAL STANDARD

Under the All Writs Act, 28 U.S.C. § 1651(a), federal courts have the power to grant "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." "To the extent that the writ of *coram nobis* retains vitality in criminal proceedings, such relief is limited to (1) errors 'of the most fundamental character' that render the proceeding invalid, (2) situations where there are sound reasons for the failure to seek earlier relief, and (3) instances when the defendant continues to suffer from his conviction even though he is out of custody." *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007) (quoting *United States v. Morgan*, 346 U.S. 502, 509, n.15 (1954)). "A writ of error *coram nobis* generally provides the same relief as a writ of habeas corpus," except that a defendant can seek a writ of error *coram nobis* even after being released from custody. *United States v. Medley*, No. 88 CR 297-3, 1995 WL 755302, at *1 (N.D. Ill. Dec. 18, 1995). The Supreme Court has cautioned that "[c]ontinuation of litigation after final judgment . . . should be allowed through this extraordinary remedy only under circumstances

compelling such action to achieve justice." *Morgan*, 346 U.S. at 511. Moreover, the Supreme Court has stated that it is necessary to limit the writ to "truly extraordinary circumstances 'so that finality is not at risk in a great number of cases.'" *United States v. George*, 676 F.3d 249, 254 (1st Cir. 2012) (citing *United States v. Denedo*, 556 U.S. 904, 911 (2009)).

## DISCUSSION

In the first paragraph of Florian's writ of error *coram nobis* it states that "by and through undersigned counsel" Florian submits "this Petition for Writ of Error Coram Nobis under 28 U.S.C. § 1651 and Motion Pursuant to Rule 52(b) (Review for Plain Error)." Dkt. 58, p. 1. This is the only mention of a "Motion Pursuant to Rule 52(b)." Florian makes no other reference to such a motion, nor does the Government's response addresses it. Thus, the Court will only address Florian's writ of error *coram nobis*.

The parties agree that a writ of error *coram nobis* is a remedy that is rarely used, and that it should be used to "provide relief only from a conviction for 'errors of the most fundamental character,'" Dkt. 65, p. 5, which have "rendered the proceedings irregular and invalid." Dkt. 58, p. 8. Florian argues that her "conviction was obtained in violation of her Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel." *Id.*, p. 9. According to Florian, this is an "error of the most fundamental character." Florian advances seven specific grounds for relief which are primarily based on alleged violations of her Sixth

Amendment right to effective assistance of counsel. She also claims that her denial of effective assistance of counsel "deprived [her] of fundamentally fair proceedings and due process of law." *Id.*, p. 21. The Court will address the seven grounds for relief advanced by Florian.

**Violation of Procedural Due Process and Ineffective Assistance of Counsel**

The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law. . .". U.S. CONST. Amend. V. Florian contends that her "conviction was obtained in violation of her Fifth Amendment right to due process" but she fails to fully develop this argument. Instead, her writ of error *coram nobis* relies almost entirely on allegations that she was denied effective assistance of counsel in violation of her Sixth Amendment right. She seems to support her due process claim by asserting that she was denied a "fundamentally fair proceeding and due process of law" as a result of her trial counsel's ineffective assistance. However, as explained in greater detail below, because Florian cannot establish a claim for ineffective assistance of counsel, her due process claim, based on her trial counsel's alleged ineffectiveness, also fails.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on an ineffectiveness claim, a defendant must establish that: (i) "counsel's representation fell below an objective

standard of reasonableness," as indicated "by prevailing professional norms," and (ii) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Avitia v. United States*, No. 09 CV 4712, 2010 WL 4705167, at *2 (N.D. Ill. Nov. 10, 2010) (quoting *Strickland*, 466 U.S. at 687-88, 694). Courts must be highly deferential when examining allegations of deficient performance by a defendant's counsel. *Strickland*, 466 U.S. at 689; *see also Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011) ("To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). Thus, "because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

"To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel" and the court must "consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance." *Avitia*, 2010 WL 4705167, at *2. "Counsel's performance must be evaluated while remembering that an attorney's trial strategies are a matter of professional judgment . . .". *Id*. To establish the second prong of the *Strickland* test, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings

would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong." *Avitia*, 2010 WL 4705167, at *2.

## A. Trial Counsel's Failure to Inform Florian of Her Right to Appeal

Florian claims that she did not waive her right to an appeal. Instead, she asserts, that her trial counsel was ineffective because he failed to advise her of the need to file a timely notice of appeal and to request court appointed counsel. Dkt. 58, p. 13. The Government argues that even if the Court were to assume that Florian was not informed of her right to appeal and her right to court appointed counsel, she is unable to establish that she was prejudiced because none of her arguments that she would have pursued on appeal have merit. Dkt. 65, p. 9-10. Thus, the Government asserts, her writ of error *coram nobis* should be denied. *Id*., p. 10.

Florian, relying on *Rodriguez v. United States*, 395 U.S. 327 (1969), argues that "[w]hen a defendant fails to file a notice of appeal because of the lawyer's lapse, the defendant is entitled to take a new appeal without showing that the appeal is likely to have any merit." Dkt. 58, p. 13. However, this case is not applicable to the instant matter because, unlike Florian, the petitioner in *Rodriguez* alleged that he told his counsel to file an appeal. *Rodriquez*, 395 U.S. at 328. The Supreme Court held that "when counsel fails to file a requested appeal, a defendant is entitled to resentencing

and to an appeal without showing that his appeal would likely have merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999) (citing *Rodriquez*, 395 U.S. at 329-30). Florian's reliance on *Rodriquez* is misplaced as the facts presented in *Rodriquez* do not exist here.

Florian instead asserts that her trial counsel was ineffective because he failed to advise her of the need to file a timely notice of appeal and request court appointed counsel. Dkt. 58, p. 13. To prevail on this claim, Florian must establish both that her trial counsel's failure to provide this information constitutes deficient performance and that his deficient performance caused prejudice. "An attorney's failure to file a notice of appeal on behalf of a client does not constitute *per se* deficient performance under *Strickland*." *Avitia*, 2010 WL 4705167, at *3. "Instead of a bright-line rule, in situations where an attorney does not file a notice of appeal, the court must first ask the antecedent question of 'whether counsel in fact consulted with the defendant about an appeal.'" *Id*. (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). According to Florian, "[a]t the end of the trial, [her] attorney never discussed the fact that [she] could appeal the case." Dkt. 58, Def. Ex. A ¶ 6. Thus, in cases where "counsel does not consult with the defendant, and the defendant never instructs counsel to file a notice of appeal, the question becomes 'whether counsel's failure to consult with the defendant itself constitutes deficient performance.'" *Avitia*, 2010 WL 4705167, at *3 (quoting *Roe* , 528 U.S. at 478).

In cases like the instant matter, "where the defendant's wishes to file a notice of appeal are either unclear or not conveyed to counsel," to determine "whether counsel's failure to file such notice of appeal" constitutes a *Strickland* violation a court should apply the two part test outlined in *Roe v. Flores-Ortega*. *Avitia*, 2010 WL 4705167, at *3. In *Roe v. Flores-Ortega*, the Court articulated that:

> to satisfy the first prong of the *Strickland* test, namely that counsel's performance was deficient, the defendant must show that his counsel's failure to consult resulted in a deficient performance because either: "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

*Bednarski v. United States*, 481 F.3d 530, 536 (7th Cir. 2007) (quoting *Roe*, 528 U.S. at 480). "A showing of either of these factors [ ] prove[s] deficiency and thus satisf[ies] the first *Strickland* prong." *Id.* (emphasis added).

After applying *Roe v. Flores-Ortega* to the record before the Court, Florian's "petition does not satisfy the heavy burden that is necessary to prove deficient performance by [her] attorney." *Avitia*, 2010 WL 4705167, at *4. As explained in greater detail below, the Court cannot conclude that there are nonfrivolous grounds which Florian would have pursued on appeal. This contradicts the argument that a rational defendant would want to seek an appeal. Additionally, Florian was sentenced to five years probation and she was required to: (i) reside in and participate in the Work Release Program at the Metropolitan Correctional Center for a period of six months; (ii) file timely income tax returns while on supervision; and (iii) complete

300 hours of community service.  Dkt. 56, p. 7-8.  This too suggests that a rational defendant would not want to appeal.  *See Avitia*, 2010 WL 4705167, at *4 ("a rational defendant would not want to appeal" where petitioner's sentence was 15 months shorter than the minimum guideline sentence); *see also Bednarski*, 481 F.3d at 536 (a rational defendant would not want to appeal his sentence where petitioner was sentenced "to the bottom of the advisory Guideline imprisonment range for his crimes").  As to the second factor articulated by *Roe v. Flores-Ortega*, Florian provides no evidence that indicates that she reasonably demonstrated to her trial counsel that she was interested in appealing.  We recognize that her trial counsel filed a post-trial motion, but this, in conjunction with her statement that she maintained her innocence at all times, is insufficient to establish that she reasonably demonstrated her interest in pursuing an appeal.  Moreover, her writ of error *coram nobis* was filed almost thirty years after she was convicted and sentenced.  For these reasons, Florian cannot satisfy the first prong of the *Strickland* test.

Assuming that Florian was able to establish the first prong of the *Strickland* test, this claim would still fail because she cannot satisfy the second prong of the *Strickland* test.  "In *Flores-Ortega*, the Court stated that to satisfy the second prong of the *Strickland* test . . . 'a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'"  *Id*. at 536-37 (quoting *Roe*, 528 U.S. at 484).  This determination "will turn on the facts of a particular case," but "evidence

that there were nonfrivolous grounds for an appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." *Roe*, 528 U.S. at 485. While nonfrivolous grounds may support a defendant's claim, it "is unfair to *require* a . . . defendant to demonstrate that his hypothetical appeal might have merit." *Id*. at 486) (emphasis in original). "A defendant's inability to demonstrate potential merit 'will not foreclose the possibility that he can satisfy the prejudice requirement where there are other *substantial reasons* to believe that he would have appealed.'" *Bednarski*, 481 F.3d at 537 (quoting *Roe*, 528 U.S. at 486) (emphasis added).

As more thoroughly explained below, Florian has not alleged any nonfrivolous grounds for an appeal. Nor has she provided evidence of "other *substantial reasons*" that would lead this Court to believe that she would have appealed. In her affidavit she states that her "attorney never discussed the fact that [she] could appeal the case," and that she "did not know [she] had a right to appeal this case . . .". Dkt. 58, Def. Ex. A ¶¶ 6, 9. She also argues in her writ of error *coram nobis* that "it was questionable that no appeal was pursued." Dkt. 58, p. 13. While these statements indicate her lack of knowledge regarding her right to appeal, they fall short of establishing that but for her trial counsel's (alleged) ineffective performance, she would have appealed. Moreover, there is no evidence to suggest that she "promptly expressed a desire to appeal." Accordingly, even if we were to assume that Florian's trial counsel's performance was deficient, his deficient performance did not deprive her of anything and therefore, Florian is not entitled to relief. *See Roe*, 528 U.S. at 484 ("If the

11

defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief.").

**B. Trial Judge's Failure to Inform Florian of Her Right to Appeal**

Florian relies on *Tress v. United States*, 87 F.3d 188 (7th Cir. 1996) and *United States ex rel. Singleton v. Woods*, 440 F.2d 835 (7th Cir. 1971) to support her claim that the trial judge deprived her of equal protection under the fourteenth amendment because he allegedly failed to inform her of her right to appeal and her right to court-appointed counsel on appeal, if she was indigent. Dkt. 58, p. 12. The Government asserts that even if the Court were to assume that the trial judge failed to inform Florian of her right to appeal and her right to court appointed counsel, she is unable to establish that she was prejudiced.[1] Dkt. 65, p. 9-10.

In *Tress*, the Seventh Circuit concluded that where there is a failure to appeal due to a judge's error, "defendant is entitled to take a new appeal without showing that the appeal is likely to have any merit." *Tress*, 87 F.3d at 190. In *Singleton*, the Court held "that the failure of the trial judge to advise petitioner of his right to appeal with court-appointed counsel was a violation of his constitutional rights." *Singleton*, 440 F.2d at 838. However, following these Seventh Circuit decisions, the Supreme

---

[1] The Court notes that a defendant must overcome the strong presumption of reliability that is normally applied to judicial proceedings. Beyond Florian's argument in her writ of error *coram nobis* that the trial judge failed to inform of her right to appeal, there is nothing else in the record to support this statement. As the Government recognizes, her affidavit lacks any information regarding what the trial judge told her after she was convicted or at sentencing.

Court in *Peguero*, stated that "[o]ur precedents establish, as a general rule, that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." 526 U.S. at 27. The Court continued, "[t]he fact of the violation, standing alone . . . does not entitle petitioner to collateral relief." *Id*. at 28. As previously noted, and as discussed in greater detail below, Florian has failed to allege prejudice due to the trial judge's (alleged) failure to inform her of her right to appeal. Thus, while Florian may be able to establish that the trial judge technically violated a rule of Federal Procedure, she is not entitled to collateral relief because she cannot establish prejudice due to this violation.

## C. Improper Comments

Florian claims that her trial counsel was ineffective because he failed to "object at trial or voir dire jurors, or move for a mistrial based on" comments made by the prosecutor that insinuated that Florian was a lesbian and he failed to "pursue this issue on appeal." Dkt. 58, p. 14. As recognized by both parties, there are no transcripts from the trial or the sentencing. However, in the Government's response, labeled as Government Exhibit F, there is a copy of the Government's 1987 Response to Florian's Post-Trial Motion. *See* Dkt. 66, Gov. Ex. F. According to this exhibit, Florian's trial counsel filed a post-trial motion that challenged the trial court's denial of her motion for a mistrial which was based on a government witnesses' testimony that supposedly implied that Florian was a lesbian. *Id*., p. 5. While Florian

acknowledges that the post-trial motion challenged the alleged comments that implied she was a lesbian, she fails to recognize that her trial counsel also moved for a mistrial "after a government witness gave testimony 'indicating that [she was] a lesbian.'" Dkt. 58, p. 14. Thus, Government Exhibit F negates Florian's argument that her trial counsel was ineffective because he failed to move for a mistrial based on comments that insinuated that she was a lesbian.

Florian's argument that her trial counsel was ineffective for failing to object at trial "to the improper comments" fails because *Strickland* and its progeny do not allow hindsight based attacks on counsel's tactical choices." *United States ex rel. Jones v. Chrans*, 187 F. Supp. 2d 993, 1009 (N.D. Ill. 2002); *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quoting *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007)) ("Trial tactics are a matter of professional judgment, and . . . we will not play 'Monday [or Tuesday] morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case."). "[R]eview of an attorney's tactical decisions is highly deferential." *Lathrop*, 634 F.3d at 937. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *United States ex rel. Webster v. De Tella*, 965 F. Supp. 1124, 1133 (N.D. Ill. 1997) (quoting *Strickland*, 466 U.S. at 689) (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)).

Although Florian contends that the prosecutor made improper statements, Government Exhibit F indicates that a government witness referred to one of Florian's friends as "her girlfriend" in response to a question during cross examination. Dkt. 66, Gov. Ex. F p. 5. Given this information, Florian has not "overcome the presumption" that her trial counsel's failure to object to the allegedly "improper comments" could be "considered sound trial strategy." Accordingly, trial counsel's failure to object at trial does not support an ineffective assistance of counsel claim.

Florian also asserts her attorney was ineffective for failing to voir dire jurors. "It is true that an attorney's failure to question jurors regarding possible bias can potentially constitute deficient performance." *Lathrop*, 634 F.3d at 937. However, assuming Florian's trial counsel did not question jurors about their potential bias towards lesbians, Florian's writ of error *coram nobis* lacks "specific facts that would lead us to believe that [Florian's] counsel's performance fell below the level of reasonableness and that the result of [her] trial would have been different" had such a question been asked. *United States v. Monigan*, 128 F.3d 609, 612 (7th Cir. 1997). Thus, Florian cannot sustain a claim of ineffective assistance of counsel on this basis.

Finally, Florian argues that her trial counsel was ineffective for failing to pursue "this issue on appeal." Dkt. 58, p. 14. Although she has raised more than one issue in this claim, because none of these issues could have been successfully raised on appeal, Florian cannot establish that she was prejudiced by her trial counsel's failure "to pursue this issue on appeal." *See United States v. Bowman*, No. 00 CV

4486, 2001 WL 32843, at *2 (N.D. Ill. Jan. 12, 2001) ("Since defendant does not point to any issue that could have been successfully raised on appeal, he has not satisfied the prejudice component.").

### D. Verdict Form

Florian next asserts that the verdict form was improper because "it suggested a verdict was necessary on at least one count, if not all" and, she argues, that her trial counsel was ineffective for not objecting "to the verdict" and for not pursuing "this issue on appeal." Dkt. 58, p. 15. The Government contends that the verdict forms were "typical of verdict forms that were used in this jurisdiction at the time" and that Florian's "conclusory allegations of error are insufficient to overcome the high burden required to show that counsel was ineffective." Dkt. 65, p. 12 (citing *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005)).

Government Exhibit I, which appears to be a copy of the blank verdict forms from Florian's trial, indicates that the jury could have convicted on all counts, acquitted on all counts, or convicted on some counts and acquitted on some counts. *See* Dkt. 65-1, Gov. Ex. I. This exhibit contradicts Florian's argument that the verdict forms were improper because they suggested a verdict was necessary on at least one, if not all of the counts, because the jury had the ability to acquit on all three counts. Consequently, this argument fails. Florian's next argument lacks merit because her trial counsel did object to the verdict in both his post-trial motion, *see* Dkt. 66, Gov. Ex. F p. 1-2, and in a motion for judgment of acquittal (or for a new trial). *See*

Dkt. 56, p. 7. Finally, as to Florian's claim that her trial counsel was ineffective for failing to "pursue this issue on appeal," although there are a number of issues asserted here, because Florian could not have successfully raised these issues on appeal, she cannot establish that she was prejudiced by her trial counsel's failure to pursue these issues on appeal. *See Bowman*, 2001 WL 32843, at *2.

### E. Jury Instructions

Florian also argues that her trial counsel was ineffective because he "failed to request instructions on the theory of defense, or specific instructions as to conspiracy law and the failure of one alleged buy-sell transaction to support a conspiracy." Dkt. 58, p. 16. As articulated above, and as argued by the Government, "hindsight based attacks on counsel's tactical choices" are not permitted. *See Chrans*, 187 F. Supp. 2d at 1009. "As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged." *Webster*, 965 F. Supp. at 1132. Florian has not overcome the strong presumption that trial counsel has engaged in strategic decision-making. Thus, she has not established that her trial counsel acted unreasonably when he allegedly failed to request certain jury instructions.

Florian's claim for ineffective assistance of counsel based on her trial counsel's failure to request a "missing witness instruction[ ] as to the alleged co-conspirator" lacks merit because as indicated by Government Exhibit F Florian's trial counsel did request a missing witness instruction, which the trial court denied. Dkt. 66, Gov. Ex.

F p. 6. ("The court refused a 'missing witness' instruction . . ."). Thus, she cannot establish that her trial counsel acted unreasonably by failing to request a particular instruction, when in fact the request was made. As to Florian's claim that her attorney was ineffective for failing to request an instruction regarding her alleged post-Miranda statements, according to Government Exhibit F, "no evidence was elicited as to what occurred after [Florian] received her <u>Miranda</u> warnings." *Id.*, p. 4. Florian's trial counsel could not have acted unreasonably when he failed to request an instruction regarding statements that were never elicited or admitted into evidence. Accordingly, because there is no evidence that suggests Florian's trial counsel acted unreasonably with regard to the jury instructions, her ineffective assistance of counsel claim on this basis fails.

### F. Verdict

Florian's reliance on *Yates v. United States*, 354 U.S. 298, 312 (1957) is misplaced. Dkt. 58, p. 16. In *Yates*, "the conspiracy charged embraced both 'advocacy' of violent overthrow and 'organizing' the Communist Party, and the jury was instructed that in order to convict it must find a conspiracy extending to both objectives." *Yates*, 354 U.S. at 311. The Supreme Court held that a verdict should be set aside "in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.*, at 312. Here, the jury convicted Florian on Count I, conspiracy to possess with the intent to distribute cocaine, and acquitted her on Counts II and III. Unlike in *Yates*, it is not "impossible

to tell which ground the jury selected" to convict her. Nor can the verdict in Count I be supported by more than one ground. Thus, the verdict should not be set aside.

Florian also asserts that "it was inconsistent for the jury to have rendered a guilty verdict on the conspiracy [count] but a not guilty verdict on the substantive offense." Dkt. 58, p. 16. But, as the Government correctly argues, "the acquittal of a defendant on a substantive charge does not undermine the conviction of that defendant on a conspiracy charge." Dkt. 65, p. 16. (citing *United States v. Abayomi*, 820 F.2d 902, 907 (7th Cir. 1987)). The Seventh Circuit more recently has stated that:

> Regardless of how the apparent inconsistency in a jury's determination presents itself, it is well established that "[i]nconsistent verdicts in a criminal case are not a basis for reversal of a conviction or the granting of a new trial." *United States v. Reyes*, 270 F.3d 1158, 1168 (7th Cir. 2001) (collecting authority). This is because the Supreme Court has recognized that inconsistent jury verdicts may occur for various reasons, including mistake, compromise, or lenity.

*United States v. Askew*, 403 F.3d 496, 501 (7th Cir. 2005); *see also United States v. Evans*, 486 F.3d 315, 322 (7th Cir. 2007) (same). Accordingly, this argument fails.

Finally, Florian argues that her trial counsel was ineffective for "failing to pursue this in post-verdict motions or on appeal." Dkt. 58, p. 16. Yet, once again, Government Exhibit F demonstrates that Florian's trial counsel did raise the issue of inconsistent verdicts in his post-trial motion, which the trial court ultimately denied. Dkt. 65, p. 16; *see also* Dkt. 66, Gov. Ex. F p. 1-2. Moreover, the Supreme Court has stated that such a claim should not be reviewable. *United States v. Powell*, 469 U.S.

57, 66 (1984) ("The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."). Thus, Florian cannot establish a claim for ineffective assistance of counsel on this ground.

### G. Interpreter

Florian contends that because she did not have an interpreter during the proceedings, "[t]his calls into question the entire legitimacy of the proceedings and whether [she] was competent to make decisions about going to trial, testifying, not pursing an appeal, etc." Dkt. 58, p. 17. According to Florian, her trial counsel did not speak Spanish and her "English was extremely limited at the time." *Id*. Consequently, Florian claims, she could not: (i) understand complex legal issues; (ii) make decisions regarding her rights; (iii) make decisions regarding whether or not to testify; or (iv) adequately assist in her defense. *Id*. The Government responds with a number of different arguments. First, the Government notes that Florian's writ of error *coram nobis* conflicts with her affidavit. In her writ of error *coram nobis*, Florian states that her trial counsel "did not speak Spanish" and that her "English was extremely limited at the time." Dkt. 65, p. 17. Yet, in her affidavit, Florian asserts that her trial counsel "spoke some Spanish" and that she spoke a little English, which allowed them "to communicate with each other a little bit, but as I know now, not like a lawyer and client should." *Id*.; Dkt. 58, Def. Ex. A ¶ 7. Next, the Government contends that because Florian signed several stipulations, which were "central to the

Government's theory of the case," it is unlikely that she was unable to communicate with her trial counsel. Dkt. 65, p. 17-18. Most compelling, however, is the Government's argument that Florian cannot establish any of the factors articulated by the Seventh Circuit in *United States v. Cirrincione*, 780 F.2d 620 (7th Cir. 1986), which would demonstrate that she was denied due process. Dkt. 65, p. 18-19.

In *Cirrincione*, the Seventh Circuit stated:

> A defendant in a criminal proceeding is denied due process when: (1) what is told him is incomprehensible; (2) the accuracy and scope of a translation at a hearing or trial is subject to grave doubt; (3) the nature of the proceeding is not explained to him in a manner designed to insure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the district court fails to review the evidence and make appropriate findings of fact.

*Cirrincione*, 780 F.2d at 634. The parties agree that Florian was not provided with an interpreter during her trial. Dkt. 58, p. 17 and Def. Ex. A ¶ 8; Dkt. 65, p. 17. Consequently, the second factor from *Cirrincione* is not applicable to our analysis. Florian's conflicting statements regarding her comprehension of the English language demonstrate she was able to communicate, although to a limited extent, with her trial counsel. *See* Dkt. 58, Def. Ex. A ¶ 7. Thus, the allegations do not establish that the information that Florian's trial counsel shared with her was "incomprehensible." Nor does Florian allege that the nature of the proceedings [were] not explained to [her] in a manner designed to insure [her] full comprehension." *Cirrincione*, 780 F.2d at 634. Florian's conclusory statements that "[c]ertainly [her English] was not sufficient to

understand complex legal issues and make decisions regarding her rights," fall short of demonstrating that the nature of the proceedings were not properly explained to her. Dkt. 58, p. 17. Moreover, as the government acknowledges, it is unlikely that she would have signed key stipulations without any explanation or understanding of what she was signing.

Florian does not allege that she made "a credible claim of incapacity to understand due to language difficulty" and that the "district court fail[ed] to review the evidence and make appropriate findings of fact." *Cirrincione*, 780 F.2d at 634. While a district court has wide discretion in determining whether an interpreter is necessary, a judge cannot take corrective measures if it is unaware of a defendant's difficulty in understanding the proceedings. *See Rivas v. Dinwiddle*, No. 07-CV-152-GKF-PJC, 2010 WL 476651, at *6 (N.D. Okla. Feb. 4, 2010) (petitioner's due process claim was denied where he could not establish that, "if in fact no interpreter was present," that he requested an interpreter . . ."); *see also United States v. Nguyen*, No. CR-03-189-M, 2009 WL 890512, at *4 (W.D. Okla. Mar. 31, 2009) (Defendant "admitted that he did not, at any time, before, during, or after trial ask the Court to appoint an interpreter for him." It is only when "the defendant makes any difficulty known to the court" that the judge can "take corrective measures."). Here, Florian does not allege that she informed the court, or her trial counsel, of her language difficulties or of her need for an interpreter. Nor does she assert that the court denied a request for an interpreter. In fact, Florian admits that when she went to court she

never spoke.[2] Dkt. 58, Def. Ex. A ¶ 8. "To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation for abuse." *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989). Similarly here, to allow Florian to remain silent throughout trial, and then after she is found guilty, to let her assert a due process violation is an invitation for abuse. Moreover, the credibility of Florian's claim is questionable considering she waited almost thirty years to raise this issue. *See Marquez v. Bradshaw*, No. 1:09CV1620, 2011 WL 1457148, at *9 (N.D. Ohio Mar. 4, 2011) ("credibility of Petitioner's claim is questionable since he waited until after trial and only raised an issue at the time of sentencing"). Thus, Florian cannot establish that the trial was fundamentally unfair, such that, she was denied due process.

Florian does not explicitly argue that her Sixth Amendment right to effective assistance of counsel was violated because her trial counsel failed to request an interpreter. Without any specific allegations that her attorney was aware of her language difficulties or her inability to understand the proceedings, Florian falls "far short of carrying [her] burden of persuasion as to the two elements of the test outlined in *Strickland v. Washington* . . .". *Turcotte*, 405 F.3d at 537; *see also United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993) (burden of proof and persuasion lies with defendant in establishing an ineffective assistance of counsel claim).

---

[2] The Court notes that Florian was a lawful permanent resident for ten years prior to her conviction and that during the same year she was convicted, she was working as an accounts payable clerk for Tops Inc.

## H. Immigration Penalties

Finally, Florian asserts her trial counsel's "affirmative misrepresentation regarding the deportation consequences . . . constituted ineffective assistance because it did not advise of the true inherent risk of automatic deportation and inadmissibility." Dkt. 58, p. 20. Florian relies on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) to support this argument. In *Padilla*, the petitioner alleged that prior to his guilty plea, his attorney failed to inform him of the possibility of deportation and that because he had been in the country for so long, he did not have to worry about his immigration status. *Id*. at 1478. The Supreme Court of Kentucky denied Padilla's post-conviction relief holding that "the Sixth Amendment's guarantee of effective assistance of counsel does not protect a criminal defendant from erroneous advice about deportation because it is merely a 'collateral' consequence of his conviction." *Id*. However, after granting certiorari, the Supreme Court concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id*. at 1482. Consequently, *Strickland* applied to Padilla's ineffective assistance claim. *Id*. The Court ultimately held that Padilla had "sufficiently alleged that his counsel was constitutionally deficient," and thus, to avoid constitutionally deficient representation, an attorney must inform his or her client of the risk of deportation due to a guilty plea. *Id*. at 1486-87.

Following its holding in *Padilla*, the Supreme Court "decided definitively [in *Chaidez v. United States*] that *Padilla* announced a new rule, which was not

retroactive." *See Chavarria v. United States*, 739 F.3d 360, 362 (7th Cir. 2014). In the instant matter, because Florian was sentenced in 1987, *Padilla* is not applicable. Thus, "[o]n collateral review, lacking retroactivity, we will look only to the state of the law at the time the conviction became final." *Id.* At the time of Florian's conviction, "regardless of how egregious the failure of counsel was if it dealt with immigration consequences, pre-*Padilla*, both the Sixth Amendment and the *Strickland* test were irrelevant." *Id.* at 363. Thus, at the time of her conviction, Florian's trial counsel's alleged behavior did not fall "below an objective standard of reasonableness" as indicated by "the prevailing professional norms" of that time. *Strickland*, 466 U.S. at 687-88. Consequently, Florian cannot establish a Sixth Amendment violation on this basis.

## CONCLUSION

Although there may be "sounds reasons" for Florian's failure to seek earlier relief and while she may continue to suffer from her conviction, she has failed to establish that an "error of the most fundamental character" has occurred, which would render the prior proceedings invalid. Thus, the writ of error *coram nobis* is denied. Dkt. 58.

Charles P. Kocoras
United States District Judge

Date: 9/6/2016